UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DRIP CAPITAL, INC.,

*Plaintiff,*

-against-

YISROEL TABI, SARAH TABI, SHALOM TABI and ETHEL TABI,

*Defendants.*

Civil Action No.: 1:25-cv-00601-DG-TAM

PLAINTIFF DEMANDS TRIAL BY JURY

SECOND AMENDED COMPLAINT

Plaintiff Drip Capital, Inc., by and through its undersigned counsel, Scarola Zubatov Schaffzin PLLC, for its Amended Complaint[1] against defendants Yisroel Tabi, Sarah Tabi, Shalom Tabi and Ethel Tabi, alleges as follows:

*The Parties, Jurisdiction and Venue*

2. Plaintiff is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California.

3. Defendant Yisroel Tabi ("Yisroel") is a resident of the State of New York and operates businesses relevant to the claims herein through corporate entities organized under the laws of the State of New York.

4. Defendant Sarah Tabi ("Sarah") is a resident of the State of New York or New Jersey, is the wife if Yisroel, and upon information and belief, operates businesses relevant to

[1] Changes from the Amended Complaint are shown in Track Changes in Appendix A.

the claims herein through corporate entities organized under the laws of the State of New York.

5. Defendant Shalom Tabi ("Shalom") is a resident of the State of New York.

6. Defendant Ethel Tabi ("Ethel") is a resident of the State of New York.

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity between plaintiff, on the one hand, and defendants, on the other hand, and, as alleged herein, the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) because defendants are residents of the State in which this District is located and §1391(b)(2) because a substantial part of the events and omissions giving rise to the claims in this case occurred in this District.

*Introduction — Summary Description of the Claims Asserted*

9. This case arises from an elaborate fraudulent scheme in which the defendants own and operate multiple entities conducting the same business, and borrowed extensively from plaintiff through loans induced by fraud to operate their collective business, leaving an unpaid debt to plaintiff which stands at the time this case is commenced at no less than $1,254,440 (exclusive of accumulating interest in collection costs) — but with the further twist that the named borrower falsely identified and represented to the plaintiff is actually a conflation of two different (among the defendants' various entities) limited liability companies with names indistinguishable without foreknowledge of the issue or a digital search technology (one using the number "0" in its name and the other using the capital letter "O" in its name), with those two entities created under the laws of different states. Those

facts were not disclosed to and were hidden from plaintiff. Had the truth been known to plaintiff, plaintiff would of course not have agreed to enter into the lending agreement it made and would not have suffered the damage it has suffered and is suffering.

*Facts Common to All Causes of Action*

10. Plaintiff is in the business of, among other things, lending to smaller- and medium-sized companies for their working capital needs for financing inventory acquisition.

11. In or around August 2022, Yisroel negotiated with and obtained from plaintiff financing for his business, represented to be operated through a New Jersey limited liability company, engaged in acquiring and re-selling various consumer products for a profit, with a significant portion of his business involving sales on the Amazon website.

12. Yisroel also provided various financial documentation to plaintiff as part of its onboarding and underwriting process.

13. Based on Yisroel's representations and the information provided, plaintiff entered into a lending agreement executed by Yisroel with Yisroel's limited liability company (the "Borrower-in-Name") titled Master Revolving Supply Chain Financing Agreement dated as of September 6, 2022.

14. Yisroel then sought to increase the amount of borrowing from plaintiff on a number of occasions throughout 2023 and 2024 and in order to induce plaintiff to agree supplied additional, updated financial information, with no change to his material representations as to the Borrower-in-Name, and based on Yisroel's representations and financial information provided, plaintiff entered into additional iterations of the Master Revolving Supply Chain Financing Agreement in substantially the same form but with higher lending limits which were then executed by Yisroel with Yisroel's limited liability company,

the Borrower-in-Name (such agreements referred to herein as the "Agreement").

15. The Agreement provided, among other things, for ongoing financing by plaintiff of inventory acquisition by the Borrower-in-Name for the business Yisroel represented it conducted in individual advances upon presentation or proposed inventory acquisition documentation, all as set forth more fully in the Agreement.

16. At the time of commencement of this case, plaintiff is owed no less than $1,254,440 in accordance with the Agreement.

17. Yisroel at all times represented the business to be his business engaged in acquiring and re-selling various consumer products for a profit through the Borrower-in-Name limited liability company, with a significant portion of his business involving sales on the Amazon website.

18. Yisroel did not disclose the material facts described and alleged herein.

19. As detailed in the following allegations, but not disclosed by Yisroel to plaintiff at any relevant time, (i) the Borrower-in-Name does not exist as represented by Yisroel — instead, Yisroel partly owns and controls, with other defendants, two distinct entities with confusingly similar names, the identity of which Yisroel conflated in the Agreement as he executed it — and (ii) defendants together, including with Yisroel, own and operate a number of additional business entities in addition to the entities comprising the Borrower-in-Name which are incorporated in New York, Florida and New Jersey and which they use to carry on the same business as Yisroel held out to be the business of the Borrower-in-Name, employing them interchangeably to conduct Yisroel's and their business, and using them to commit fraud as alleged here.

*A. The Borrower-in-Name — The Two Similarly-Named Entities*

20. One of the two entities comprising the Borrower-in-Name was established in New Jersey as a limited liability company under New Jersey law in 2017, with the name "The R20 Group LLC," in which the third character in the "R20" name is the number "0" that is spelled "zero" as a word. (This entity shall be referred to herein as "R2numberNJ" for the sake of greater clarity.)

21. One of the two entities comprising the Borrower-in-Name was established in Florida in as a limited liability company under Florida law in 2020, with the name "The R2O Group LLC," in which the third character in the "R2O" name is the letter "O" as a capital letter. (This entity shall be referred to herein as "R2letterFLA" for the sake of greater clarity.)

22. Defendants had previously, in 2012, established a limited liability company under New York law with the same name as R2letterFLA but dissolved it on the same day, January 8, 2020, as forming the R2letterFLA entity in Florida.

23. The legal written names of the entities — as R2numberNJ or R2letterFLA — are essentially indistinguishable to a reader and indistinguishable without employing a text search tool.

24. R2numberNJ and R2letterFLA have separate, unique taxpayer identification numbers.

25. The financial documentation provided by Yisroel as to the Borrower-in-Name conflates the identity as R2numberNJ and R2letterFLA.

26. For example, the financial statements prepared by outside accountants and provided by Yisroel to plaintiff to induce it to lend refer to both entities in different places, but predominantly refer to R2letterFLA, the Florida entity, yet describe the entity generally as a

New Jersey entity and refer to the entity's New Jersey taxes, and filing a New Jersey State tax return, without mention of a Florida business entity.

27. As a further example of the conflation of the Borrower-in-Name identity in financial data provided by Yisroel to plaintiff to induce it to lend, financial documentation provided by Yisroel without indication it was prepared by any outside accounting firm refers to the New Jersey entity, R2numberNJ, without reference to the R2letterFLA business.

28. In the Agreement executed by Yisroel, the Borrower-in-Name is described as a New Jersey limited liability company with a New Jersey address, as represented to be the case to plaintiff by Yisroel, but references to the Borrower-in-Name entity name are in the R2letterFLA form.

29. In order to induce plaintiff to lend, Yisroel provided to plaintiff Borrower-in-Name's 2023 federal tax return which is filed for R2numberNJ and describes the Borrower-in-Name's business as a New Jersey business with that entity's federal tax identification number.

30. A search of the LinkedIn social media and networking platform identifies numerous employees associated with R2letterFLA, but some based in New Jersey and others based in Florida.

31. The Borrower-in-Name maintains a website that uses the R2letterFLA name, without identification as a limited liability company, and refers to its Dania, Florida, warehouse, but without further identification of an address or the business's identity or contact information (contacts are invited through an online submission form).

32. Upon information and belief, the portion of the Borrower's business conducted through Amazon is conducted through multiple accounts and associated with multiple public-

facing selling accounts sometimes known as storefronts with Yisroel and defendants having identified some of those accounts, on the one hand, with R2numberNJ and some of those accounts, on the other hand, with R2letterFLA.

*B. The Entities Through Which Defendants Conduct the Borrower-in-Name's Business*

33. R2numberNJ has been owned, according to public records, at all relevant times by, at least, directly or indirectly, Yisroel and Sarah.

34. At some time in 2023, R2numberNJ became owned in substantial part by TRG Group, Inc. ("TRG"), a corporation formed that year with its public records identifying Sarah as a principal.

35. R2letterFLA has been owned, according to public records, at all relevant times by, at least, Shalom, Yisroel and Sarah, including with identification of an address for Shalom in Dania, Florida, the city in which a warehouse for R2letterFLA is identified on the R2letterFLA website as alleged above.

36. In addition to R2numberNJ and R2letterFLA, the defendants also, collectively, created and deployed and use numerous additional limited liability companies and corporate entities to carry out the business of the Borrower-in-Name as it was represented by Yisroel to plaintiff, which entities have been and are used interchangeably with the Borrower-in-Name entities and each other by defendants, and conducted in myriad ways so as to frustrate recovery by plaintiff (or any creditor) of amounts owed by Borrower-in-Name.

37. For one example, defendants established a limited liability company in Florida under Florida law in 2021 with the name Recondition Geek NA LLC ("GeekFLA").

38. GeekFLA has been owned, according to public records, at all relevant times by, at least, Ethel and Yisroel.

39. GeekFLA has an Amazon "storefront," in the nature of the Amazon storefront presences associated with the Borrower-in-Name's business under various different names and accounts as alleged above, associated with it and its name and associated with Ethel's Florida address that appears in the Florida Division of Corporation public records as the address for the Amazon business.

40. The Borrower-in-Name has redirected inventory financed by plaintiff for the benefit of the Borrower-in-Name in accordance with the Agreement to and for the benefit of the GeekFLA by arranging delivery to an Amazon facility for the benefit of GeekFLA and for GeekFLA's account with Amazon.

41. As of the time of the commencement of this case, GeekFLA is selling an extensive array of various consumer products for the benefit of defendants — the products represented by Yisroel to plaintiff to be sold in the business of the Borrower-in-Name.

42. Defendants, at least Yisroel, Ethel and Shalom, established a limited liability company in New York under New York law in 2009 with the name Complete Geekz LLC which remains active at their address in New York State, 1212 Locust Avenue, Brooklyn, NY ("Condition Geekz").

43. Upon information and belief, Condition Geekz sells the products for the benefit of defendants represented by Yisroel to plaintiff to be sold in the business of the Borrower-in-Name.

44. Upon information and belief, defendants, or at least Yisroel and Shalom, established a limited liability company in New York under New York law in 2021 with the name HBSD 101 HOLDINGS LLC which remains active at defendants' address in New York State, 1212 Locust Avenue, Brooklyn, NY ("HBSD").

45. Defendants use HBSD as part of the business being conducted by defendants in the nature of the business represented by Yisroel to plaintiff as being conducted by the Borrower-in-Name, including to obtain financing for the business attributable to the Borrower-in-Name in excess of $100,000.

46. Defendants, at least Sarah and, upon information and belief, Yisroel, established a limited liability company in New Jersey under New Jersey law in 2020 with the name HSYT Products LLC ("HSYT").

47. HSYT has an Amazon "storefront," in the nature of the Amazon storefront presences associated with the Borrower-in-Name's business under various different names and accounts as alleged above, associated with it and its name and associated with Yisroel's and Sarah's former address that appears various public records as the address for the Amazon business.

48. Upon information and belief, HSYT has been and is selling an extensive array of various consumer products for the benefit of defendants — the products represented by Yisroel to plaintiff to be sold in the business of the Borrower-in-Name.

49. Upon information and belief, TRG, the most recently formed corporation among those operated by defendants, recently identified as a part owner of the Borrower-in-Name, has been and is selling an extensive array of various consumer products for the benefit of defendants — the products represented by Yisroel to plaintiff to be sold in the business of the Borrower-in-Name.

50. Defendants control warehouse space in Florida through their various entities, including in one or both of Dania, Florida, as identified on the R2letterFLA website, and/or at 3042 NW 73rd Street, Miami, FL, at which they acquire and distribute and sell the same

consumer products represented as being the same business of the Borrower-in-Name to plaintiff — acquiring and re-selling various consumer products for a profit.

51. Defendants conduct this business, however, in a manner intended to and having the effect of frustrating and defeating the rights of plaintiff to collect amounts owed to it by the Borrower in-Name.

*C. Defendants Recent Problems at Amazon Leading to Failures to Pay*

52. In recent months, a substantial part of the business conducted by defendants on Amazon, at least through the Borrower-in-Name and possibly through their other entities, has been shut down by Amazon because of claims made to Amazon that products were being sold infringed on intellectual property rights of others or, upon information and belief, in some instances, included merchandise from a not authentic origin.

*D. The Harm as a Consequence of Defendants' Conduct of Their Various Entities*

53. In the wake of the issues that arose at Amazon, the defendants' various entities, including the Borrower-in-Name and of course the defendants themselves, have faced adverse financial consequences the substantial debt owed to plaintiff's been unpaid and in default.

54. Defendant's conduct of their business, including in particular that of R2numberNJ and R2letterFLA comprising the Borrower-in-Name, and the improper conflation and interchangeable use of those two entities, as well as the conflation and interchangeable operation of the defendants' business engaged in acquiring and re-selling various consumer products for a profit with the business of the R2numberNJ and R2letterFLA entities comprising the Borrower-in-Name, has caused substantial harm to plaintiff and in particular harm in its ability to be paid the money it has loaned based upon the fraudulent representations of the identity of the borrower.

55. This harm of course begins with the fraudulent inducement to lend money in circumstances in which plaintiff would not have had the true material circumstances of defendants and the Borrower-in-Name been known; plaintiff would not have made the loans it did but for the fraudulent representations and omissions as alleged here.

56. The money now owed to plaintiff might not be collectible in whole or in part from the named Borrower-in-Name in the circumstances alleged and plaintiff is already suffering damage from having this substantial debt in default and needing to take, and taking, steps to collect it.

57. In addition, the defendants' conduct of their business as alleged has led to a legal morass that itself is an impediment to plaintiff's collection of its debt, in a reasonable and efficient way and possibly at all.

58. That morass includes the following as a direct and proximate result of defendants' conduct alleged herein.

59. While plaintiff is a secured creditor under its lending documents, and has properly perfected security interests against R2numberNJ and R2letterFLA, with a relatively senior priority position in at least some respects, its ability to pursue those rights is compromised by the morass in that there are numerous other secured creditors of those entities which have perfected, or attempted to perfect, security interests in a way that, once the existence of these two similarly named entities is known, can be described as random, inconsistent and, in some instances, likely to be ineffective to accomplish the expectations of those other lenders, all with the result of the morass is likely to lead to litigation among a number of disappointed creditor parties which will effectively block any near-term, cost-effective, collection by plaintiff of its debt (if collection would be possible at all from the

Borrower-in-Name entities in light of these issues alone).

60. These issues are further complicated by the fact that the Borrower-in-Name owes, in particular, substantial secured debts, among others, to its bank lender and the United States Small Business Administration, apparently in amounts and substantially greater than what is owed to plaintiff, which debts are personally guaranteed by both Yisroel and Sarah, but based upon public records, either or both of those entities did not effectively perfect security interests with respect to their debt, at least as to one if not both of the two Borrower-in-Name entities, such that in this way as well the conduct of the defendants will likely result in litigation among at least the involved creditors as to their debt, perfection and guarantees, effectively blocking any near-term, cost-effective, collection by plaintiff of its debt (if collection would be possible at all from the Borrower-in-Name entities in light of these issues alone).

61. These issues are further complicated still by the fact that those entities have substantial assets at Amazon in the way of both amounts payable as well as inventory, but the conduct of the defendants has left it unclear at least in the view of other creditors to which entity such cash payable and inventory belongs, similarly effectively blocking any near-term, cost-effective, collection by plaintiff of its debt (if collection would be possible at all from the Borrower-in-Name entities in light of these issues alone).

62. Above all, defendants have used their conduct as alleged to attempt now to extract concessions from plaintiff precisely because their conduct has ostensibly shielded assets that should properly be available to pay the debt owed to plaintiff and because the ensuing morass, they believe, presents an economic threat to plaintiff and an opportunity for them to move on unscathed in the wake of a collapse of a part of the house of cards business.

63. This action follows.

*Additional Facts as to Personal Jurisdiction Over the Defendants*

64. Numerous additional facts show the bases for asserting person jurisdiction over the defendants in this Court.

65. For one thing, the defendants' entities inventory is held largely at Amazon in accordance with what is known as a "Fulfilled by Amazon Agreement" or "FBA" contracts (https://sell.amazon.com/fulfillment-by-amazon (last accessed on December 17, 2025)).

66. Those centers are scattered across the United States, but significant locations are in New York and in this District, including in Manhattan (https://www.vno.com/office/property/7-west-34th-street/3311656/landing (last accessed on December 17, 2025)) and at or connected to JFK Airport (*see*, *e.g.*, https://zonhack.com/amazon-warehouse-locations-in-new-york/ (last accessed on December 17, 2025)) and https://commons.wikimedia.org/wiki/Category:Amazon_Warehouse_DYY3#:~:text=English:%20Amazon%20Warehouse%20DYY3%2C%20a.k.a.%20the%20JFK.Boulevard)%20in%20Woodmere%2C%20Five%20Towns%2C%20New%20York (last accessed on December 17, 2025)).

67. In light of the volume of Amazon inventory involved, a substantial part of the inventory held at Amazon is virtually certain to be held in New York.

68. But separate and apart from the inventory, the defendants themselves reside in this District and/or describe their New York presence in numerous business and publicly available records.

69. Defendants Shalom and Ethel Tabi reside at 1212 Locust Avenue in Brooklyn.

70. Upon information and belief, defendants Yisroel and Sarah Tabi also either reside at that address or use it for operation of the businesses in issue in this case.

71. Other New York addresses are frequently used by defendants.

72. By way of example, plaintiff financed (among much other financing) approximately

$130,000 in merchandise based on approximately 120 invoices presented by the R2 entities to plaintiff for financing in or around February 2024, each of which invoices states:

> "Bill To:
> THE R2O GROUP LLC
> YISROEL TABI
> 1212 Locust Ave
> Brooklyn, NY 11230"

73. Defendant Yisroel Tabi and R2 expressly identifies his New York location/presence on LinkedIn pages he controls. Yisroel Tabi's LinkedIn page, https://www.linkedin.com/in/yisroeltabi/ (last accessed on December 17, 2025), describes himself as a resident of/located in "Brooklyn, NY," and an officer of "The R2O Group." ¶11. This social media page is plainly active, identifying 1,717 "followers" and more than 500 connections. That page links to The R2O Group LinkedIn page, https://www.linkedin.com/company/the-r2o-group/ (last accessed on December 17, 2025), where the entity is described as "The right tech, right on time! Procuring what you need, when you need it! Technology, Information and Internet" and as a "a technology asset procurement company based out of 5314 16TH AVE, Brooklyn, New York, United States."

74. The New York defendants' presence is similarly echoed on numerous public data websites. For example, defendant and New York resident Shalom Tabi is identified as the sole member of R2letterFLA in a 2021 federal tax lien. Defendant and New York resident Ethel Tabi is identified as an Officer, Manager and Registered Agent in the Annual Report of defendants' GeekFLA entity. But GeekFLA has no apparent physical presence in Florida and, upon information and belief, operates from New York through its New York-based principal.

75. Notably, moreover, although GeekFLA's most recent annual report, filed on January 6, 2026 (available at https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=flal-l21000459581-1bdf3a34-6c3c-42dc-b617-af324c900b14&transactionId=l21000459581-f2744193-c6a5-4226-8965-945c0b9aaa03&formatType=PDF, last accessed on May 1, 2026), has scrubbed any mention of Yisroel

Tabi to make it appear that Ethel Tabi is GeekFLA's sole owner, in fact, the annual reports for 2025 (filed on June 10, 2025, available at https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=flal-l21000459581-1bdf3a34-6c3c-42dc-b617-af324c900b14&transactionId=l21000459581-04361e7d-de59-47af-8fe2-a276534a81d1&formatType=PDF, last accessed on May 1, 2025) and 2024 (filed on January 25, 2024, available at https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=flal-l21000459581-1bdf3a34-6c3c-42dc-b617-af324c900b14&transactionId=l21000459581-dc7376db-b389-41fe-a56f-7fe3880650ff&formatType=PDF, last accessed on May 1, 2026), were *both signed not by Ethel* Tabi *but by Yisroel Tabi*, and state, in the 2025 document, that he is an "Officer" of Recondition, and in the 2024 document, that he is both an "Officer" and an "Authorized Member." Thus, Yisroel Tabi clearly had and, on information and belief, continues to have a leading role in operating this entity that has a New York-based principal and is otherwise operated out of New York.

76. Significantly, even Fulton Bank, N.A., which appears to be the largest creditor of the defendants' entities, alleges that defendants' R2numberNJ has a New York principal place of business from which these defendants operate their collective business:

> "Defendant, The R20 Group, LLC ("R-Twenty") is a New Jersey limited liability company with *an address of 1212 Locust Ave., Brooklyn, New York*, 11230, and according to the New Jersey Secretary of State maintains a registered agent of Yisroel Tabi located at 36 Trudy Lane, Lakewood, New Jersey, 08701." (Emphasis added.)

FIRST CAUSE OF ACTION —
AGAINST DEFENDANT YISROEL TABI
(Fraud)

77. Plaintiff repeats and realleges each allegation above as if fully set forth here.

78. Yisroel fraudulently induced plaintiff to enter into the Agreement and to lend the money that has not been repaid, as alleged herein, including in particular with respect to

his identification of the Borrow-in-Name, R2numberNJ and R2letterFLA and to the confusion and conflation as to those entities as alleged herein.

79. Yisroel did so in inducing plaintiff to lend by his misrepresentations of fact, false statements and omissions of material facts (rendering his communications to plaintiff false), including in the pertinent documents he delivered to plaintiff, including in particular with respect to the identity of the Borrow-in-Name, R2numberNJ and R2letterFLA and to the confusion and conflation as to those entities as alleged herein,

80. Yisroel knew that the information he represented and provided to plaintiff to induce it to lend as alleged herein was false when represented and provided and that that information also contained material omissions when provided rendering his communications to plaintiff to induce it to lend as alleged herein false when made.

81. Yisroel knew at the time he imparted such information to plaintiff that the information was material to plaintiff's decision to lend and such information was material to plaintiff's decision in fact.

82. With respect to the material facts omitted, Yisroel had superior knowledge as to them and the truth was not readily or meaningfully available to plaintiff through the exercise of any effort reasonable in the circumstances (to the extent ascertainable by plaintiff at the time of the material omissions at all).

83. Yisroel imparted such false information to plaintiff with the intention that plaintiff would rely upon it and, relatedly, with the intention that plaintiff be defrauded as alleged herein.

84. Plaintiff relied upon that information and did so reasonably in the circumstances as alleged herein.

85. Plaintiff was damaged by Yisroel's intentional material false statements and material omissions as alleged herein including to the extent of having lent money and not being repaid to the extent of no less than $1,254,440.

86. Yisroel is therefore liable to plaintiff in the amount of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract).

SECOND CAUSE OF ACTION —
AGAINST DEFENDANT YISROEL TABI
(Negligent Misrepresentation)

87. Plaintiff repeats and realleges each allegation above as if fully set forth here.

88. Yisroel's ongoing relationship with plaintiff over time created a special relationship with plaintiff for Yisroel to speak truthfully.

89. With respect to the material facts at issue, Yisroel had superior knowledge as to them and the truth was not readily or meaningfully available to plaintiff through the exercise of any effort reasonable in the circumstances (to the extent ascertainable by plaintiff at the time of the material false statements and omissions at all).

90. The material false statements and omissions proximately caused plaintiff's damages alleged herein.

91. If for any reason Yisroel's conduct as alleged herein were deemed not intentional, such conduct would still and nonetheless constitute negligent misrepresentations by which plaintiff was damaged by Yisroel as alleged herein including to the extent of having lent money and not being repaid to the extent of no less than $1,254,440.

92. Yisroel is therefore liable for this additional reason to plaintiff in the amount of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of

collection (including attorneys' fees as mandated by contract).

THIRD CAUSE OF ACTION —
AGAINST ALL DEFENDANTS
(Conspiracy to Commit Fraud)

93. Plaintiff repeats and realleges each allegation above as if fully set forth here.

94. Each of defendants joined together with the other defendants in an agreement to commit the fraud against plaintiff alleged herein.

95. Yisroel took the steps alleged herein to commit the fraud against plaintiff.

96. Each of defendants took additional steps in relation to the various entities they own and control as alleged herein to commit the fraud against plaintiff and further the damage to plaintiff.

97. Each of defendants intended to participate in the fraud against plaintiff and did so knowingly and with full knowledge of it and with the intent that the fraud against plaintiff be committed.

98. The material false statements and omissions as alleged herein proximately caused plaintiff's damages alleged herein.

99. Each of defendants' participatory conduct was a part of the conduct that proximately caused plaintiff's damages alleged herein.

100. The fraud against plaintiff in which each defendant intentionally and knowingly participated damaged plaintiff as alleged herein including to the extent of having lent money and not being repaid to the extent of no less than $1,254,440.

101. Each defendant is therefore liable to plaintiff in the amount of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract).

FOURTH CAUSE OF ACTION —
AGAINST DEFENDANT YISROEL TABI
(Aiding and Abetting Fraud)

102. Plaintiff repeats and realleges each allegation above as if fully set forth here.

103. Each of defendants had knowledge of the fraud against plaintiff as alleged herein.

104. Each of defendants provided substantial assistance in committing the fraud against plaintiff.

105. Each of defendants' participatory conduct was a part of the conduct that proximately caused plaintiff's damages alleged herein.

106. Each of defendants' participatory conduct included their role and ownership in R2numberNJ and/or R2letterFLA and also other entities as alleged herein which play a role in the scheme of entities used by defendants to conduct business in a manner contrary to what had been represented (albeit falsely) to plaintiff and that has been intended to and has had the proximate cause and effect of causing harm and damage to plaintiff, including as alleged herein, and including in particular, but without limitation, to the extent of plaintiff having lent money and not being repaid to the extent of no less than $1,254,440.

107. Each defendant is therefore liable to plaintiff in the amount of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract).

WHEREFORE, plaintiff demands Judgment in its favor and against defendants as follows:

a. on the First Cause of Action, against defendant Yisroel Tabi, awarding damages to plaintiff of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract);

b. on the Second Cause of Action, against defendant Yisroel Tabi, awarding damages to plaintiff of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract);

c. on the Third Cause of Action, against each of defendants Yisroel Tabi, Sarah Tabi, Shalom Tabi and Ethel Tabi, jointly and severally, awarding damages to plaintiff of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract); and

d. on the Fourth Cause of Action, against each of defendants Yisroel Tabi, Sarah Tabi, Shalom Tabi and Ethel Tabi, jointly and severally, awarding damages to plaintiff of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract);

together with granting such other and further relief for plaintiff and against each of defendants as the Court deems just and proper.

Dated: May 14, 2025

SCAROLA ZUBATOV SCHAFFZIN PLLC

By /s/ Richard J.J. Scarola
Richard J.J. Scarola
*Attorneys for Plaintiff Drip Capital, Inc.*
620 Fifth Avenue
2nd Floor
New York, NY 10020
Tel.: (212) 757-0007

# APPENDIX A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DRIP CAPITAL, INC.,<br><br>*Plaintiff,*<br><br>-against-<br><br>YISROEL TABI, SARAH TABI, SHALOM TABI and ETHEL TABI,<br><br>*Defendants.* | Civil Action No.: 1:25-cv-00601-DG-TAM<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## SECOND AMENDED COMPLAINT

Plaintiff Drip Capital, Inc., by and through its undersigned counsel, Scarola Zubatov Schaffzin PLLC, for its Amended Complaint[1] against defendants Yisroel Tabi, Sarah Tabi, Shalom Tabi and Ethel Tabi, alleges as follows:

*The Parties, Jurisdiction and Venue*

2. Plaintiff is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California.

3. Defendant Yisroel Tabi ("Yisroel") is a resident of the State of New York and operates businesses relevant to the claims herein through corporate entities organized under the laws of the State of New York.

4. Defendant Sarah Tabi ("Sarah") is a resident of the State of New York or New Jersey, is the wife if Yisroel, and upon information and belief, operates businesses relevant to

[1] Changes from the Amended Complaint are shown in Track Changes in Appendix A.

the claims herein through corporate entities organized under the laws of the State of New York.

5. Defendant Shalom Tabi ("Shalom") is a resident of the State of New York.

6. Defendant Ethel Tabi ("Ethel") is a resident of the State of New York.

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity between plaintiff, on the one hand, and defendants, on the other hand, and, as alleged herein, the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) because defendants are residents of the State in which this District is located and §1391(b)(2) because a substantial part of the events and omissions giving rise to the claims in this case occurred in this District.

*Introduction — Summary Description of the Claims Asserted*

9. This case arises from an elaborate fraudulent scheme in which the defendants own and operate multiple entities conducting the same business, and borrowed extensively from plaintiff through loans induced by fraud to operate their collective business, leaving an unpaid debt to plaintiff which stands at the time this case is commenced at no less than $1,254,440 (exclusive of accumulating interest in collection costs) — but with the further twist that the named borrower falsely identified and represented to the plaintiff is actually a conflation of two different (among the defendants' various entities) limited liability companies with names indistinguishable without foreknowledge of the issue or a digital search technology (one using the number "0" in its name and the other using the capital letter "O" in its name), with those two entities created under the laws of different states. Those

facts were not disclosed to and were hidden from plaintiff. Had the truth been known to plaintiff, plaintiff would of course not have agreed to enter into the lending agreement it made and would not have suffered the damage it has suffered and is suffering.

*Facts Common to All Causes of Action*

10. Plaintiff is in the business of, among other things, lending to smaller- and medium-sized companies for their working capital needs for financing inventory acquisition.

11. In or around August 2022, Yisroel negotiated with and obtained from plaintiff financing for his business, represented to be operated through a New Jersey limited liability company, engaged in acquiring and re-selling various consumer products for a profit, with a significant portion of his business involving sales on the Amazon website.

12. Yisroel also provided various financial documentation to plaintiff as part of its onboarding and underwriting process.

13. Based on Yisroel's representations and the information provided, plaintiff entered into a lending agreement executed by Yisroel with Yisroel's limited liability company (the "Borrower-in-Name") titled Master Revolving Supply Chain Financing Agreement dated as of September 6, 2022.

14. Yisroel then sought to increase the amount of borrowing from plaintiff on a number of occasions throughout 2023 and 2024 and in order to induce plaintiff to agree supplied additional, updated financial information, with no change to his material representations as to the Borrower-in-Name, and based on Yisroel's representations and financial information provided, plaintiff entered into additional iterations of the Master Revolving Supply Chain Financing Agreement in substantially the same form but with higher lending limits which were then executed by Yisroel with Yisroel's limited liability company,

the Borrower-in-Name (such agreements referred to herein as the "Agreement").

15. The Agreement provided, among other things, for ongoing financing by plaintiff of inventory acquisition by the Borrower-in-Name for the business Yisroel represented it conducted in individual advances upon presentation or proposed inventory acquisition documentation, all as set forth more fully in the Agreement.

16. At the time of commencement of this case, plaintiff is owed no less than $1,254,440 in accordance with the Agreement.

17. Yisroel at all times represented the business to be his business engaged in acquiring and re-selling various consumer products for a profit through the Borrower-in-Name limited liability company, with a significant portion of his business involving sales on the Amazon website.

18. Yisroel did not disclose the material facts described and alleged herein.

19. As detailed in the following allegations, but not disclosed by Yisroel to plaintiff at any relevant time, (i) the Borrower-in-Name does not exist as represented by Yisroel — instead, Yisroel partly owns and controls, with other defendants, two distinct entities with confusingly similar names, the identity of which Yisroel conflated in the Agreement as he executed it — and (ii) defendants together, including with Yisroel, own and operate a number of additional business entities in addition to the entities comprising the Borrower-in-Name which are incorporated in New York, Florida and New Jersey and which they use to carry on the same business as Yisroel held out to be the business of the Borrower-in-Name, employing them interchangeably to conduct Yisroel's and their business, and using them to commit fraud as alleged here.

*A. The Borrower-in-Name — The Two Similarly-Named Entities*

20. One of the two entities comprising the Borrower-in-Name was established in New Jersey as a limited liability company under New Jersey law in 2017, with the name "The R20 Group LLC," in which the third character in the "R20" name is the number "0" that is spelled "zero" as a word. (This entity shall be referred to herein as "R2numberNJ" for the sake of greater clarity.)

21. One of the two entities comprising the Borrower-in-Name was established in Florida in as a limited liability company under Florida law in 2020, with the name "The R2O Group LLC," in which the third character in the "R2O" name is the letter "O" as a capital letter. (This entity shall be referred to herein as "R2letterFLA" for the sake of greater clarity.)

22. Defendants had previously, in 2012, established a limited liability company under New York law with the same name as R2letterFLA but dissolved it on the same day, January 8, 2020, as forming the R2letterFLA entity in Florida.

23. The legal written names of the entities — as R2numberNJ or R2letterFLA — are essentially indistinguishable to a reader and indistinguishable without employing a text search tool.

24. R2numberNJ and R2letterFLA have separate, unique taxpayer identification numbers.

25. The financial documentation provided by Yisroel as to the Borrower-in-Name conflates the identity as R2numberNJ and R2letterFLA.

26. For example, the financial statements prepared by outside accountants and provided by Yisroel to plaintiff to induce it to lend refer to both entities in different places, but predominantly refer to R2letterFLA, the Florida entity, yet describe the entity generally as a

New Jersey entity and refer to the entity's New Jersey taxes, and filing a New Jersey State tax return, without mention of a Florida business entity.

27. As a further example of the conflation of the Borrower-in-Name identity in financial data provided by Yisroel to plaintiff to induce it to lend, financial documentation provided by Yisroel without indication it was prepared by any outside accounting firm refers to the New Jersey entity, R2numberNJ, without reference to the R2letterFLA business.

28. In the Agreement executed by Yisroel, the Borrower-in-Name is described as a New Jersey limited liability company with a New Jersey address, as represented to be the case to plaintiff by Yisroel, but references to the Borrower-in-Name entity name are in the R2letterFLA form.

29. In order to induce plaintiff to lend, Yisroel provided to plaintiff Borrower-in-Name's 2023 federal tax return which is filed for R2numberNJ and describes the Borrower-in-Name's business as a New Jersey business with that entity's federal tax identification number.

30. A search of the LinkedIn social media and networking platform identifies numerous employees associated with R2letterFLA, but some based in New Jersey and others based in Florida.

31. The Borrower-in-Name maintains a website that uses the R2letterFLA name, without identification as a limited liability company, and refers to its Dania, Florida, warehouse, but without further identification of an address or the business's identity or contact information (contacts are invited through an online submission form).

32. Upon information and belief, the portion of the Borrower's business conducted through Amazon is conducted through multiple accounts and associated with multiple public-

facing selling accounts sometimes known as storefronts with Yisroel and defendants having identified some of those accounts, on the one hand, with R2numberNJ and some of those accounts, on the other hand, with R2letterFLA.

*B. The Entities Through Which Defendants Conduct the Borrower-in-Name's Business*

33. R2numberNJ has been owned, according to public records, at all relevant times by, at least, directly or indirectly, Yisroel and Sarah.

34. At some time in 2023, R2numberNJ became owned in substantial part by TRG Group, Inc. ("TRG"), a corporation formed that year with its public records identifying Sarah as a principal.

35. R2letterFLA has been owned, according to public records, at all relevant times by, at least, Shalom, Yisroel and Sarah, including with identification of an address for Shalom in Dania, Florida, the city in which a warehouse for R2letterFLA is identified on the R2letterFLA website as alleged above.

36. In addition to R2numberNJ and R2letterFLA, the defendants also, collectively, created and deployed and use numerous additional limited liability companies and corporate entities to carry out the business of the Borrower-in-Name as it was represented by Yisroel to plaintiff, which entities have been and are used interchangeably with the Borrower-in-Name entities and each other by defendants, and conducted in myriad ways so as to frustrate recovery by plaintiff (or any creditor) of amounts owed by Borrower-in-Name.

37. For one example, defendants established a limited liability company in Florida under Florida law in 2021 with the name Recondition Geek NA LLC ("GeekFLA").

38. GeekFLA has been owned, according to public records, at all relevant times by, at least, Ethel and Yisroel.

39. GeekFLA has an Amazon "storefront," in the nature of the Amazon storefront presences associated with the Borrower-in-Name's business under various different names and accounts as alleged above, associated with it and its name and associated with Ethel's Florida address that appears in the Florida Division of Corporation public records as the address for the Amazon business.

40. The Borrower-in-Name has redirected inventory financed by plaintiff for the benefit of the Borrower-in-Name in accordance with the Agreement to and for the benefit of the GeekFLA by arranging delivery to an Amazon facility for the benefit of GeekFLA and for GeekFLA's account with Amazon.

41. As of the time of the commencement of this case, GeekFLA is selling an extensive array of various consumer products for the benefit of defendants — the products represented by Yisroel to plaintiff to be sold in the business of the Borrower-in-Name.

42. Defendants, at least Yisroel, Ethel and Shalom, established a limited liability company in New York under New York law in 2009 with the name Complete Geekz LLC which remains active at their address in New York State, 1212 Locust Avenue, Brooklyn, NY ("Condition Geekz").

43. Upon information and belief, Condition Geekz sells the products for the benefit of defendants represented by Yisroel to plaintiff to be sold in the business of the Borrower-in-Name.

44. Upon information and belief, defendants, or at least Yisroel and Shalom, established a limited liability company in New York under New York law in 2021 with the name HBSD 101 HOLDINGS LLC which remains active at defendants' address in New York State, 1212 Locust Avenue, Brooklyn, NY ("HBSD").

45. Defendants use HBSD as part of the business being conducted by defendants in the nature of the business represented by Yisroel to plaintiff as being conducted by the Borrower-in-Name, including to obtain financing for the business attributable to the Borrower-in-Name in excess of $100,000.

46. Defendants, at least Sarah and, upon information and belief, Yisroel, established a limited liability company in New Jersey under New Jersey law in 2020 with the name HSYT Products LLC ("HSYT").

47. HSYT has an Amazon "storefront," in the nature of the Amazon storefront presences associated with the Borrower-in-Name's business under various different names and accounts as alleged above, associated with it and its name and associated with Yisroel's and Sarah's former address that appears various public records as the address for the Amazon business.

48. Upon information and belief, HSYT has been and is selling an extensive array of various consumer products for the benefit of defendants — the products represented by Yisroel to plaintiff to be sold in the business of the Borrower-in-Name.

49. Upon information and belief, TRG, the most recently formed corporation among those operated by defendants, recently identified as a part owner of the Borrower-in-Name, has been and is selling an extensive array of various consumer products for the benefit of defendants — the products represented by Yisroel to plaintiff to be sold in the business of the Borrower-in-Name.

50. Defendants control warehouse space in Florida through their various entities, including in one or both of Dania, Florida, as identified on the R2letterFLA website, and/or at 3042 NW 73rd Street, Miami, FL, at which they acquire and distribute and sell the same

consumer products represented as being the same business of the Borrower-in-Name to plaintiff — acquiring and re-selling various consumer products for a profit.

51. Defendants conduct this business, however, in a manner intended to and having the effect of frustrating and defeating the rights of plaintiff to collect amounts owed to it by the Borrower in-Name.

*C. Defendants Recent Problems at Amazon Leading to Failures to Pay*

52. In recent months, a substantial part of the business conducted by defendants on Amazon, at least through the Borrower-in-Name and possibly through their other entities, has been shut down by Amazon because of claims made to Amazon that products were being sold infringed on intellectual property rights of others or, upon information and belief, in some instances, included merchandise from a not authentic origin.

*D. The Harm as a Consequence of Defendants' Conduct of Their Various Entities*

53. In the wake of the issues that arose at Amazon, the defendants' various entities, including the Borrower-in-Name and of course the defendants themselves, have faced adverse financial consequences the substantial debt owed to plaintiff's been unpaid and in default.

54. Defendant's conduct of their business, including in particular that of R2numberNJ and R2letterFLA comprising the Borrower-in-Name, and the improper conflation and interchangeable use of those two entities, as well as the conflation and interchangeable operation of the defendants' business engaged in acquiring and re-selling various consumer products for a profit with the business of the R2numberNJ and R2letterFLA entities comprising the Borrower-in-Name, has caused substantial harm to plaintiff and in particular harm in its ability to be paid the money it has loaned based upon the fraudulent representations of the identity of the borrower.

55. This harm of course begins with the fraudulent inducement to lend money in circumstances in which plaintiff would not have had the true material circumstances of defendants and the Borrower-in-Name been known; plaintiff would not have made the loans it did but for the fraudulent representations and omissions as alleged here.

56. The money now owed to plaintiff might not be collectible in whole or in part from the named Borrower-in-Name in the circumstances alleged and plaintiff is already suffering damage from having this substantial debt in default and needing to take, and taking, steps to collect it.

57. In addition, the defendants' conduct of their business as alleged has led to a legal morass that itself is an impediment to plaintiff's collection of its debt, in a reasonable and efficient way and possibly at all.

58. That morass includes the following as a direct and proximate result of defendants' conduct alleged herein.

59. While plaintiff is a secured creditor under its lending documents, and has properly perfected security interests against R2numberNJ and R2letterFLA, with a relatively senior priority position in at least some respects, its ability to pursue those rights is compromised by the morass in that there are numerous other secured creditors of those entities which have perfected, or attempted to perfect, security interests in a way that, once the existence of these two similarly named entities is known, can be described as random, inconsistent and, in some instances, likely to be ineffective to accomplish the expectations of those other lenders, all with the result of the morass is likely to lead to litigation among a number of disappointed creditor parties which will effectively block any near-term, cost-effective, collection by plaintiff of its debt (if collection would be possible at all from the

Borrower-in-Name entities in light of these issues alone).

60. These issues are further complicated by the fact that the Borrower-in-Name owes, in particular, substantial secured debts, among others, to its bank lender and the United States Small Business Administration, apparently in amounts and substantially greater than what is owed to plaintiff, which debts are personally guaranteed by both Yisroel and Sarah, but based upon public records, either or both of those entities did not effectively perfect security interests with respect to their debt, at least as to one if not both of the two Borrower-in-Name entities, such that in this way as well the conduct of the defendants will likely result in litigation among at least the involved creditors as to their debt, perfection and guarantees, effectively blocking any near-term, cost-effective, collection by plaintiff of its debt (if collection would be possible at all from the Borrower-in-Name entities in light of these issues alone).

61. These issues are further complicated still by the fact that those entities have substantial assets at Amazon in the way of both amounts payable as well as inventory, but the conduct of the defendants has left it unclear at least in the view of other creditors to which entity such cash payable and inventory belongs, similarly effectively blocking any near-term, cost-effective, collection by plaintiff of its debt (if collection would be possible at all from the Borrower-in-Name entities in light of these issues alone).

62. Above all, defendants have used their conduct as alleged to attempt now to extract concessions from plaintiff precisely because their conduct has ostensibly shielded assets that should properly be available to pay the debt owed to plaintiff and because the ensuing morass, they believe, presents an economic threat to plaintiff and an opportunity for them to move on unscathed in the wake of a collapse of a part of the house of cards business.

63. This action follows.

*Additional Facts as to Personal Jurisdiction Over the Defendants*

64. Numerous additional facts show the bases for asserting person jurisdiction over the defendants in this Court.

65. For one thing, the defendants' entities inventory is held largely at Amazon in accordance with what is known as a "Fulfilled by Amazon Agreement" or "FBA" contracts (https://sell.amazon.com/fulfillment-by-amazon (last accessed on December 17, 2025)).

66. Those centers are scattered across the United States, but significant locations are in New York and in this District, including in Manhattan (https://www.vno.com/office/property/7-west-34th-street/3311656/landing (last accessed on December 17, 2025)) and at or connected to JFK Airport (*see*, *e.g.*, https://zonhack.com/amazon-warehouse-locations-in-new-york/ (last accessed on December 17, 2025)) and https://commons.wikimedia.org/wiki/Category:Amazon_Warehouse_DYY3#:~:text=English:%20Amazon%20Warehouse%20DYY3%2C%20a.k.a.%20the%20JFK,Boulevard)%20in%20Woodmere%2C%20Five%20Towns%2C%20New%20York (last accessed on December 17, 2025)).

67. In light of the volume of Amazon inventory involved, a substantial part of the inventory held at Amazon is virtually certain to be held in New York.

68. But separate and apart from the inventory, the defendants themselves reside in this District and/or describe their New York presence in numerous business and publicly available records.

69. Defendants Shalom and Ethel Tabi reside at 1212 Locust Avenue in Brooklyn.

70. Upon information and belief, defendants Yisroel and Sarah Tabi also either reside at that address or use it for operation of the businesses in issue in this case.

71. Other New York addresses are frequently used by defendants.

72. By way of example, plaintiff financed (among much other financing) approximately

$130,000 in merchandise based on approximately 120 invoices presented by the R2 entities to plaintiff for financing in or around February 2024, each of which invoices states:

> "Bill To:
> THE R2O GROUP LLC
> YISROEL TABI
> 1212 Locust Ave
> Brooklyn, NY 11230"

73. Defendant Yisroel Tabi and R2 expressly identifies his New York location/presence on LinkedIn pages he controls. Yisroel Tabi's LinkedIn page, https://www.linkedin.com/in/yisroeltabi/ (last accessed on December 17, 2025), describes himself as a resident of/located in "Brooklyn, NY," and an officer of "The R2O Group." ¶11. This social media page is plainly active, identifying 1,717 "followers" and more than 500 connections. That page links to The R2O Group LinkedIn page, https://www.linkedin.com/company/the-r2o-group/ (last accessed on December 17, 2025), where the entity is described as "The right tech, right on time! Procuring what you need, when you need it! Technology, Information and Internet" and as a "a technology asset procurement company based out of 5314 16TH AVE, Brooklyn, New York, United States."

74. The New York defendants' presence is similarly echoed on numerous public data websites. For example, defendant and New York resident Shalom Tabi is identified as the sole member of R2letterFLA in a 2021 federal tax lien. Defendant and New York resident Ethel Tabi is identified as an Officer, Manager and Registered Agent in the Annual Report of defendants' GeekFLA entity. But GeekFLA has no apparent physical presence in Florida and, upon information and belief, operates from New York through its New York-based principal.

~~74.~~75. Notably, moreover, although GeekFLA's most recent annual report, filed on January 6, 2026 (available at https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=flal-l21000459581-1bdf3a34-6c3c-42dc-b617-af324c900b14&transactionId=l21000459581-f2744193-c6a5-4226-8965-945c0b9aaa03&formatType=PDF, last accessed on May 1, 2026), has scrubbed any mention of Yisroel

Tabi to make it appear that Ethel Tabi is GeekFLA's sole owner, in fact, the annual reports for 2025 (filed on June 10, 2025, available at https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=flal-l21000459581-1bdf3a34-6c3c-42dc-b617-af324c900b14&transactionId=l21000459581-04361e7d-de59-47af-8fe2-a276534a81d1&formatType=PDF, last accessed on May 1, 2025) and 2024 (filed on January 25, 2024, available at https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=flal-l21000459581-1bdf3a34-6c3c-42dc-b617-af324c900b14&transactionId=l21000459581-dc7376db-b389-41fe-a56f-7fe3880650ff&formatType=PDF, last accessed on May 1, 2026), were *both signed not by Ethel* Tabi *but by Yisroel Tabi*, and state, in the 2025 document, that he is an "Officer" of Recondition, and in the 2024 document, that he is both an "Officer" and an "Authorized Member." Thus, Yisroel Tabi clearly had and, on information and belief, continues to have a leading role in operating this entity that has a New York-based principal and is otherwise operated out of New York.

~~75.~~76. Significantly, even Fulton Bank, N.A., which appears to be the largest creditor of the defendants' entities, alleges that defendants' R2numberNJ has a New York principal place of business from which these defendants operate their collective business:

> "Defendant, The R20 Group, LLC ("R-Twenty") is a New Jersey limited liability company with *an address of 1212 Locust Ave., Brooklyn, New York*, 11230, and according to the New Jersey Secretary of State maintains a registered agent of Yisroel Tabi located at 36 Trudy Lane, Lakewood, New Jersey, 08701." (Emphasis added.)

FIRST CAUSE OF ACTION —
AGAINST DEFENDANT YISROEL TABI
(Fraud)

~~76.~~77. Plaintiff repeats and realleges each allegation above as if fully set forth here.

~~77.~~78. Yisroel fraudulently induced plaintiff to enter into the Agreement and to lend the money that has not been repaid, as alleged herein, including in particular with respect to

his identification of the Borrow-in-Name, R2numberNJ and R2letterFLA and to the confusion and conflation as to those entities as alleged herein.

~~78.~~79. Yisroel did so in inducing plaintiff to lend by his misrepresentations of fact, false statements and omissions of material facts (rendering his communications to plaintiff false), including in the pertinent documents he delivered to plaintiff, including in particular with respect to the identity of the Borrow-in-Name, R2numberNJ and R2letterFLA and to the confusion and conflation as to those entities as alleged herein,

~~79.~~80. Yisroel knew that the information he represented and provided to plaintiff to induce it to lend as alleged herein was false when represented and provided and that that information also contained material omissions when provided rendering his communications to plaintiff to induce it to lend as alleged herein false when made.

~~80.~~81. Yisroel knew at the time he imparted such information to plaintiff that the information was material to plaintiff's decision to lend and such information was material to plaintiff's decision in fact.

~~81.~~82. With respect to the material facts omitted, Yisroel had superior knowledge as to them and the truth was not readily or meaningfully available to plaintiff through the exercise of any effort reasonable in the circumstances (to the extent ascertainable by plaintiff at the time of the material omissions at all).

~~82.~~83. Yisroel imparted such false information to plaintiff with the intention that plaintiff would rely upon it and, relatedly, with the intention that plaintiff be defrauded as alleged herein.

~~83.~~84. Plaintiff relied upon that information and did so reasonably in the circumstances as alleged herein.

~~84.~~85. Plaintiff was damaged by Yisroel's intentional material false statements and material omissions as alleged herein including to the extent of having lent money and not being repaid to the extent of no less than $1,254,440.

~~85.~~86. Yisroel is therefore liable to plaintiff in the amount of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract).

SECOND CAUSE OF ACTION —
AGAINST DEFENDANT YISROEL TABI
(Negligent Misrepresentation)

~~86.~~87. Plaintiff repeats and realleges each allegation above as if fully set forth here.

~~87.~~88. Yisroel's ongoing relationship with plaintiff over time created a special relationship with plaintiff for Yisroel to speak truthfully.

~~88.~~89. With respect to the material facts at issue, Yisroel had superior knowledge as to them and the truth was not readily or meaningfully available to plaintiff through the exercise of any effort reasonable in the circumstances (to the extent ascertainable by plaintiff at the time of the material false statements and omissions at all).

~~89.~~90. The material false statements and omissions proximately caused plaintiff's damages alleged herein.

~~90.~~91. If for any reason Yisroel's conduct as alleged herein were deemed not intentional, such conduct would still and nonetheless constitute negligent misrepresentations by which plaintiff was damaged by Yisroel as alleged herein including to the extent of having lent money and not being repaid to the extent of no less than $1,254,440.

~~91.~~92. Yisroel is therefore liable for this additional reason to plaintiff in the amount of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of

collection (including attorneys' fees as mandated by contract).

THIRD CAUSE OF ACTION —
AGAINST ALL DEFENDANTS
(Conspiracy to Commit Fraud)

~~92.~~93. Plaintiff repeats and realleges each allegation above as if fully set forth here.

~~93.~~94. Each of defendants joined together with the other defendants in an agreement to commit the fraud against plaintiff alleged herein.

~~94.~~95. Yisroel took the steps alleged herein to commit the fraud against plaintiff.

~~95.~~96. Each of defendants took additional steps in relation to the various entities they own and control as alleged herein to commit the fraud against plaintiff and further the damage to plaintiff.

~~96.~~97. Each of defendants intended to participate in the fraud against plaintiff and did so knowingly and with full knowledge of it and with the intent that the fraud against plaintiff be committed.

~~97.~~98. The material false statements and omissions as alleged herein proximately caused plaintiff's damages alleged herein.

~~98.~~99. Each of defendants' participatory conduct was a part of the conduct that proximately caused plaintiff's damages alleged herein.

~~99.~~100. The fraud against plaintiff in which each defendant intentionally and knowingly participated damaged plaintiff as alleged herein including to the extent of having lent money and not being repaid to the extent of no less than $1,254,440.

~~100.~~101. Each defendant is therefore liable to plaintiff in the amount of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract).

FOURTH CAUSE OF ACTION —
AGAINST DEFENDANT YISROEL TABI
(Aiding and Abetting Fraud)

~~101.~~102. Plaintiff repeats and realleges each allegation above as if fully set forth here.

~~102.~~103. Each of defendants had knowledge of the fraud against plaintiff as alleged herein.

~~103.~~104. Each of defendants provided substantial assistance in committing the fraud against plaintiff.

~~104.~~105. Each of defendants' participatory conduct was a part of the conduct that proximately caused plaintiff's damages alleged herein.

~~105.~~106. Each of defendants' participatory conduct included their role and ownership in R2numberNJ and/or R2letterFLA and also other entities as alleged herein which play a role in the scheme of entities used by defendants to conduct business in a manner contrary to what had been represented (albeit falsely) to plaintiff and that has been intended to and has had the proximate cause and effect of causing harm and damage to plaintiff, including as alleged herein, and including in particular, but without limitation, to the extent of plaintiff having lent money and not being repaid to the extent of no less than $1,254,440.

~~106.~~107. Each defendant is therefore liable to plaintiff in the amount of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract).

WHEREFORE, plaintiff demands Judgment in its favor and against defendants as follows:

a. on the First Cause of Action, against defendant Yisroel Tabi, awarding damages to plaintiff of no less than $1,254,440, together with additional accruals of

interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract);

b. on the Second Cause of Action, against defendant Yisroel Tabi, awarding damages to plaintiff of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract);

c. on the Third Cause of Action, against each of defendants Yisroel Tabi, Sarah Tabi, Shalom Tabi and Ethel Tabi, jointly and severally, awarding damages to plaintiff of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract); and

d. on the Fourth Cause of Action, against each of defendants Yisroel Tabi, Sarah Tabi, Shalom Tabi and Ethel Tabi, jointly and severally, awarding damages to plaintiff of no less than $1,254,440, together with additional accruals of interest, and plaintiff's costs of collection (including attorneys' fees as mandated by contract);

together with granting such other and further relief for plaintiff and against each of defendants as the Court deems just and proper.

Dated: ~~December~~ May 1~~7~~4, 2025

SCAROLA ZUBATOV SCHAFFZIN PLLC

By /s/ Richard J.J. Scarola
Richard J.J. Scarola
*Attorneys for Plaintiff Drip Capital, Inc.*
620 Fifth Avenue
2nd Floor
New York, NY 10020
Tel.: (212) 757-0007